UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JOSE ANTONIO PARADA PEREZ,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 17-cv-03947-RMI<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 25 |

Plaintiff, Mr. Jose Antonio Prada Perez, seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits under Title II of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Docs. 4 & 8), and both parties have moved for summary judgment (Docs. 17 & 25). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

In May 22, 2014, Plaintiff filed an application for benefits under Title II, alleging a disability onset date of May 15, 2011. (Doc. 14, Administrative Record "AR" at 33). The ALJ denied the applications on October 16, 2015 (AR at 43), and the Appeals Council denied Plaintiff's request for review on April 12, 2017 (AR at 1-5).

## SUMMARY OF THE RELEVANT EVIDENCE

Plaintiff alleged disability based on traumatic brain injury, depression, migranes, and leg problems. (AR at 37). The ALJ found that Plaintiff suffered from the following severe impairments: fracture of the left lower extremity, anxiety disorder, major depressive disorder, diabetes mellitus, and essential hypertension. (*Id.* at 35). Following an automobile accident in January of 2011, in which he suffered blunt force trauma to the head, Plaintiff was treated and discharged in stable condition. (*Id.* at 39). While the results of his CT scan showed mild posterior scalp swelling, there were no indications of acute intracranial abnormalities. (*Id.*). Several months later, in May of 2011, Plaintiff suffered a broken ankle for which he underwent surgery. (*Id.*). During his hospitalization for ankle surgery, records reflect that Plaintiff also suffered from diabetes mellitus and hypertension. (*Id.*). In mid-2012, Plaintiff was referred for a psychiatric consultation due to alleging symptoms of depression and claustrophobia. (*Id.*).

*Non-Treating Physician's Opinion:*

In January of 2013, Plaintiff attended a psychiatric consultative examination with Gregory Nicholson, M.D., at the request of the state agency. (*Id.* at 962-968). During this exam, Dr. Nicholson found that Plaintiff's mood was depressed and that his affect was dysphoric. (*Id.* at

2

966). Dr. Nicholson's diagnostic impression was that Plaintiff suffered from stuttering, anxiety disorder, and major depressive disorder, assessing a GAF score of 50. (*Id*. at 967). Dr. Nicholson based these diagnoses on his observations as well as on Plaintiff's history of injuries and symptoms, and noted that "[f]rom the psychiatric standpoint, the claimant's condition is expected to improve in the next twelve months with active treatment." (*Id*.). Dr. Nicholson found that Plaintiff was mildly limited in the following areas: interacting with others; maintaining concentration, persistence and pace; accepting instructions; maintaining attendance and performing work activities on a consistent basis. (*Id*. at 967-968).

*Treating Physician's Opinions:*

On the other hand, Plaintiff's treating psychiatrist, Abilio Hernandez, M.D., who treated Plaintiff regularly between 2012 and 2013, submitted statements in February of 2013 and April of 2015 outlining rather different functional limitations related to Plaintiff's mental impairment. (*See* AR at 40, 41). Incidentally, Dr. Hernandez is a member of the American Board of Psychiatry, he is board certified in child, adolescent, and adult psychiatry, as well as forensic psychiatry, and he is certified in California as a Qualified Medical Evaluator. (*Id*. at 1023). In a form entitled, Mental Residual Functional Capacity Questionnaire, Dr. Hernandez opined in 2013 (and again in 2015) that Plaintiff has no useful ability to function in the following areas: sustaining an ordinary routine without supervision; working with or near others; completing a normal workday without interruptions from psychologically based symptoms; performing work at a reasonable pace without needing an unreasonable number of breaks; accepting instructions or responding appropriately to criticism; dealing with normal work stress; being aware of normal hazards and taking appropriate precautions; responding appropriately to changes in a routine work setting; understanding or remembering detailed instructions; setting realistic goals or making plans independently; adhering to basic standards of neatness and cleanliness; or, to use public transportation. (*Id*. at 976-977). Further, Dr. Hernandez opined that due to his conditions Plaintiff should be anticipated to be absent from work about two days per month. (*Id*. at 978). Additionally, Dr. Hernandez certified on this form that Plaintiff is not a malingerer, and that his impairments are reasonably consistent with his symptoms and the functional limitations that had been therein

described. (*Id*.).

Further, in November of 2013, Dr. Hernandez found that Plaintiff "is experiencing cognitive difficulties in multiple domains[] of critical importance which are interfering with a variety of daily functioning in terms of his attention[,] concentration, and executive functions." (*Id*. at 992). Dr. Hernandez explained that this conclusion was based on fourteen objective findings following Plaintiff's psychiatric evaluation. (*Id*. at 991). Dr. Hernandez's objective findings of Plaintiff's psychiatric profile included the following: impaired mental status; diminished verbal fluency; variable attention / concentration (impaired to average); moderate to average verbal memory; impaired executive functioning; impaired sequencing and set shifting; borderline to low average novel problem solving; severe anxiety; severe depression; and, severe hopelessness. (*Id*. at 991-992).

As to the ankle injury, Plaintiff's treating physician, Michael MacMurray, M.D., evaluated Plaintiff in July of 2015 and prepared a physical residual functional capacity assessment. (*Id*. at 1025-1029). Dr. MacMurray first noted that Plaintiff's ankle-related symptoms have lasted at least 12 months, or can be expected to last at least 12 months. (*Id*. at 1025). He also certified that Plaintiff was not a malingerer, and that his assessment of Plaintiff's functional limitations was based on Plaintiff's physical and mental limitations. (*Id*. at 1026). Dr. MacMurray noted that Plaintiff can neither stand nor sit for more than an hour, and he could not walk more than a few hundred feet without needing rest or experiencing severe pain. (*Id*.). Further, the doctor opined that Plaintiff would be able to occasionally lift less than 10 pounds, and that he could rarely lift 10 pounds, but that he could never lift anything heavier than that. (*Id*. at 1027). Dr. MacMurray also opined that Plaintiff, who walks with the assistance of a cane, can never climb stairs, and that he could be expected to be absent from work for more than four days per month. (*Id*. at 1028).

*Plaintiff's 2012 Function Report*:

On August 29, 2012, an SSA form entitled, "Function Report – Adult," was completed on Plaintiff's behalf by a person named Jane Lopez. (*Id*. at 169-176). Therein, the following statements were attributed to Plaintiff. Plaintiff lived in a house by himself. (*Id*. at 169). Plaintiff's daily routine began with the performance of some household cleaning chores. (*Id*.). When

suffering from headaches, Plaintiff found it very difficult to feed himself. (*Id*. at 170). While Plaintiff related that he did not need reminders about his personal grooming, he did need reminders about taking his medications. (*Id*. at 171). While, at one point in the form, Plaintiff noted that he needed assistance in preparing meals, at another point, he noted that he prepared his own meals on a daily basis. (*Id*.). Likewise, at one point, while noting that he did not do any household chores (*id*. at 171), at another point on the same form Plaintiff notes doing household chores as the first part of his daily routine (*id*. at 169). Plaintiff also noted that his conditions affect his ability in every one of the 19 physical and non-physical categories listed. (*Id*. at 174).

*Plaintiff's Testimony:*

On July 21, 2015, and while represented by counsel, Plaintiff testified at a hearing before the ALJ. (*Id*. at 50-64). Plaintiff's testimony was, in large part, disjointed and nonresponsive, and neither the ALJ nor Plaintiff's counsel were able to elicit coherent responses to many of their questions. Upon learning that Plaintiff suffered from headaches as a result of his accident, the ALJ asked Plaintiff whether he takes medications for his headaches. (*Id*. at 55). Plaintiff responded, "Yes, I take a lot of medicines for my headaches." (*Id*.). The ALJ next asked whether the medication helps alieve his headaches, to which Plaintiff responded, "Right now I'm not taking any of those. I'm taking some medicine." (*Id*.). Thereafter, Plaintiff testified that he was homeless at the time and living on the streets of Oceanside, California. (*Id*. at 56). Through repeated and segmented questioning, the ALJ then established that Plaintiff had used public transportation to attend the hearing. (*Id*. at 57-58).

When Plaintiff's counsel asked him if his ankle pain was intermittent or constant, Plaintiff responded that while walking he must be careful, and that sometimes his foot goes numb. (*Id*. at 62-63). When counsel rephrased and repeated his question, Plaintiff stated that his ankle hurts when he hurts himself but that it was not hurting that much at the moment. (*Id*. at 63). Counsel asked a third time, "Are you ever pain free, completely free of pain in your ankle, left ankle, and left foot?" (*Id*.). Plaintiff responded with, "I feel like it's asleep, like dead, and it hurts a lot." (*Id*.). Counsel then ventured to ask a fourth time, "But I'm trying to understand are there ever times when the foot is just fine, and the ankle is just fine with no pain?" (*Id*.). Plaintiff responded,

5

"Sometimes there's times that it hurts more. Sometimes when I'm sleeping I hurt it more, or even more than when I'm walking." (*Id*.). At this point, counsel abandoned that effort and asked Plaintiff about the severity of his ankle pain. (*Id*. at 62-63). Plaintiff responded that "It's a strong – it's really strong, like right now. Most of the time it's really strong; sometimes like right now it hardly hurts, but depending on how I'm walking, or if I step on something funny, then it hurts a lot." (*Id*. at 64). Thus, in the same breath, Plaintiff described his ankle pain in that moment as both "really strong," and "it hardly hurts." With that, counsel informed the ALJ that he had no further questions for Plaintiff. (*Id*.).

### THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that he has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[1] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. (*See* AR at 33-43).

At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (AR at 35).

At Step Two, the claimant bears the burden of showing that he has a medically severe

---

[1] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical, though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

6

impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: fracture of the lower extremity, anxiety disorder, major depressive disorder, diabetes mellitus, and essential hypertension. (AR at 35).

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR at 36-37). Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with several physical and environmental limitations. (AR at 37-41).

At Step Four, the ALJ determined that Plaintiff is unable to perform his past relevant work as a truck driver. (AR at 42).

At Step Five, the ALJ concluded that based on the testimony of the vocational expert, and the ALJ's formulation of the RFC, that Plaintiff was capable of making a successful adjustment to other work (such as housekeeping cleaner and agricultural products sorter) that existed in significant numbers in the national economy; and thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 15, 2011, through the date of the decision. (AR at 42-43).

**ISSUE PRESENTED**

Plaintiff presents a single issue for review and argues that the ALJ improperly rejected Dr. Hernandez's opinion and that the ALJ's decision should be reversed and the case remanded for calculation and payment of benefits under the credit-as-true doctrine.

**DISCUSSION**

In determining Plaintiff's limitations based on his mental conditions, the record before the ALJ contained three medical opinions, two opinions from Plaintiff's treating physicians, Drs. Hernandez and MacMurray, and one opinion from a non-treating state agency consultative examiner, Dr. Nicholson. The ALJ afforded "little weight" to the opinions of the two treating physicians, and "partial weight" to the opinion of the consultative examiner. Notably, Plaintiff has not challenged the ALJ's determination that Dr. MacMurray's opinion about Plaintiff's limitations were only afforded "little weight"; nor, has Plaintiff challenged the ALJ's decision to afford the state agency consultative examiner's opinion "partial weight."

Dr. Hernandez, a specialist in psychiatry, treated Plaintiff between 2012 and 2013. In 2013 and again in 2015, Dr. Hernandez opined that Plaintiff had no useful ability to function in the following areas: sustaining a routine; working with or near others; completing a normal workday without interruptions from psychologically based symptoms; performing work at a reasonable pace without needing an unreasonable number of breaks; accepting instructions or responding appropriately to criticism; dealing with normal work stress; being aware of normal hazards and taking appropriate precautions; responding appropriately to changes in a routine work setting; understanding or remembering detailed instructions; setting realistic goals or making plans independently; adhering to basic standards of neatness and cleanliness; or, to use public transportation. (AR at 976-977). The ALJ afforded "little weight" to Dr. Hernandez's opinion as to Plaintiff's limitations "because they appear to rely heavily on the claimant's subjective statements without support of clinical findings." (AR at 41). A review of the ALJ's decision reveals this single sentence to be the only explanation given by the ALJ for rejecting Dr. Hernandez's opinion.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when such an opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. However, an ALJ "need not discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Instead, an ALJ must only explain why

"significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984). Generally, more weight is given to a treating physician's opinion than to the opinions of those who do not treat a claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not always accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion, however, is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence only if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Here, the ALJ's only reasoning for rejecting the opinion of Plaintiff's treating psychiatrist was that "it appeared" that Dr. Hernandez's psychiatric conclusions relied heavily on Plaintiff's subjective statements and that the doctor's conclusions were unsupported by clinical findings. First, the court finds that the ALJ's reasoning was clearly speculative. Indeed, elsewhere in the decision, the ALJ noted that following "a mental status exam [by Dr. Hernandez], the claimant exhibited signs of psychomotor retardation, muscular tension, anxiety, stammering speech, difficulty expressing his ideas, and depressed mood." (AR at 40). Second, as discussed above, the court notes that Dr. Hernandez had in fact certified that his conclusions as to Plaintiff's limitations were based on fourteen *objective* findings following Plaintiff's psychiatric evaluation. (*See* AR at 991). Those objective findings of Plaintiff's psychiatric profile included Plaintiff's: impaired mental status; diminished verbal fluency; variable attention / concentration (impaired to average); moderate to average verbal memory; impaired executive functioning; impaired sequencing and set shifting; borderline to low average novel problem solving; severe anxiety; severe depression; and, severe hopelessness. (AR at 991-992).

Defendant's attempts to justify the ALJ's rejection of Dr. Hernandez's opinion are unconvincing. On one hand, Defendant presents a slightly modified version of the ALJ's single-

9

sentence justification for rejecting Dr. Hernandez's opinion. (Doc. 25 at 6) ("Here, the ALJ stated that he afforded little wright to the treating physician statements because they *tend* [rather than *appear*] to rely heavily on Plaintiff's subjective statements without support in clinical findings.") (emphasis added). On the other hand, Defendant presents a *post hoc* argument to the effect that another reason the ALJ rejected Dr. Hernandez's opinion was because it was inconsistent with the opinions of other physicians. (*Id*. at 10). However, this was not a justification relied upon or articulated by the ALJ, accordingly, the court will not consider it.

The court has reviewed and considered the record as a whole, including the testimonial and medical evidence of Plaintiff's physical and mental impairments and limitations. Because the court finds that the ALJ's stated reason for rejecting Dr. Hernandez's opinion was neither legitimate nor specific, the court therefore finds that the ALJ erroneously disregarded, or discredited, Dr. Hernandez's opinion as to Plaintiff's limitations.

The ALJ did not follow the appropriate methodology for weighting a treating physician's medical opinion; and, as discussed, there is no legitimate stated reason for rejecting Dr. Hernandez's opinion.

*Credit-As-True Doctrine:*

Having found that the Commissioner committed error by not stating a specific and legitimate reason for rejecting Dr. Hernandez's opinion, the court must now decide if remand for further proceedings is appropriate. It is well established that "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [for further proceedings]." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). It is equally well established that courts are empowered to affirm, modify, or reverse a decision by the Commissioner, "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). Generally, remand with instructions to award benefits has been considered when it is clear from the record that a claimant is entitled to benefits. *Id*.

The credit-as-true doctrine was announced in *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988) ("*Varney II*"), where it was held that when "there are no

10

outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony . . . [instead] we will . . . take that testimony to be established as true." *Id*. at 1401. The doctrine promotes fairness and efficiency, given that remand for further proceedings can unduly delay income for those unable to work and yet entitled to benefits. *Id*. at 1398.

The credit-as-true rule has been held to also apply to medical opinion evidence, in addition to claimant testimony. *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989). The standard for applying the rule to either is embodied in a three-part test, "each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

It should also be noted that "the required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). Thus, even though all conditions of the credit-as-true rule might be satisfied, remand for further proceedings would still be appropriate if an evaluation of the record as a whole creates a "serious doubt" that a claimant is, in fact, disabled. *Garrison*, 759 F.3d at 1021. On the other hand, it would be an abuse of discretion for a district court to remand a case for further proceedings where the credit-as-true rule is satisfied and the record affords no reason to believe that the claimant is not, in fact, disabled. *See id*.

Here, Plaintiff requests an application of the credit-as-true doctrine (Doc. 17 at 9-10), where Defendant argues that further administrative proceedings are necessary to sort through a number of inconsistencies such as the "interpretation of Plaintiff's inconsistent statement, the varying conclusions of the different doctors including the consultative examiner, the State agency

doctors, [] other treating physicians, and the alleged limited activities of daily living with the medical evidence." (Doc. 25 at 11-12). Defendant's argument for further administrative proceedings is persuasive. Given that at least three examining Physicians have assessed Plaintiff as having different sets of limitations, as well as the fact that only scant information was derived regarding Plaintiff's limitations at the hearing before the ALJ, as well as the fact that some of Plaintiff's statements in his function report seem to be conflicting, the court finds that the record has not been fully developed, and that further administrative proceedings would in fact serve a useful purpose. Accordingly, because the record is unclear as to the extent of Plaintiff's limitations, as well as being unclear as to whether or not Plaintiff is in fact disabled, the court will not apply the credit-as-true rule; instead, the matter is remanded to the Commissioner for further proceedings consistent with this opinion.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's motion for summary judgment, and REMANDS this matter for further proceedings consistent with this opinion.

A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: September 18, 2018.

ROBERT M. ILLMAN
United States Magistrate Judge